UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Richard Anderson<br>6665 Colonial Rd<br>Brooklyn, NY 11220<br><br>Bryan Bashin<br>374 41st Street<br>Oakland, CA 94609<br><br>Keith Beichner<br>108 Chaucer Place<br>Cherry Hill, NJ 08003<br><br>Joseph Cordova<br>663 C West Division Street<br>Chicago, IL 60610<br><br>Mary Davis<br>1275 Sarah D. Buie Rd.<br>White Oak, GA 31568<br><br>Loerance Deaver<br>10532 Royal Chapel Dr.<br>Dallas, TX 75229<br><br>Michael Evans<br>10611 DeBercy Ct.<br>Dallas, TX 75229<br><br>Joseph Farrell<br>P.O. Box 1164<br>Coventry, RI 02816<br><br>Marian Fuller<br>6155 Bobcat Bluff<br>Littleton, CO 80124<br><br>Martha Garber<br>120 Heather Glen<br>Coppell, TX 75019 | C.A. No. _____ |

| | |
|---|---|
| Diana Koreski | ) |
| 6510 284th Ave., SE | ) |
| Issaquah, WA 98027 | ) |
| | ) |
| Allen Kropp | ) |
| 42 Idlewood Drive | ) |
| Cumberland, ME 04021 | ) |
| | ) |
| Seymour Levy | ) |
| 2800 N. Lake Shore Dr. | ) |
| Chicago, IL 60657 | ) |
| | ) |
| Charles Linster | ) |
| 500 W. Belmont Ave | ) |
| Chicago, IL 60657 | ) |
| | ) |
| Brian Miller | ) |
| 312 Victoria Street | ) |
| El Cerrito, CA 94530 | ) |
| | ) |
| Jeffrey Mitchell | ) |
| 392 Roberts Drive | ) |
| Somerdale, NJ 08083 | ) |
| | ) |
| John Nelson | ) |
| 103 Kimball Rd. | ) |
| Amesbury, MA 01913 | ) |
| | ) |
| Kathleen Niemi | ) |
| 304 Scotts Court | ) |
| Bolingbroke, IL 60440 | ) |
| | ) |
| Noel Nightingale | ) |
| 3800 S. Ferris Place | ) |
| Seattle, WA 98144 | ) |
| | ) |
| Ralph Pacinelli | ) |
| 600 Old School House Dr. | ) |
| Springfield, PA 19064 | ) |
| | ) |
| Brenda Sue Rankin-White | ) |
| 2160 Spring Creek Rd. | ) |
| Decatur, GA 30033 | ) |

| | |
|---|---|
| Bruce J. Rose <br> 430 Lindbergh Drive NE <br> Atlanta, GA <br><br> Janette Shell <br> 1145 N. Vermilion Street <br> Gary, IN 60606 <br><br> Jacquelyn Tellier <br> 42 8th Street, #5412 <br> Charlestown, MA 02129, <br><br> Plaintiffs <br><br> v. <br><br> Margaret Spellings, Secretary <br> U.S. Department of Education <br> 400 Maryland Ave., SW <br> Washington, D.C. 20202 <br> in her official capacity, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT FOR RELIEF
## FROM EMPLOYMENT DISCRIMINATION

**I.  Nature of the Claim**

1. This is an action by the twenty-four above individuals alleging discrimination in federal employment on the basis of disability and age, reprisal for opposing unlawful discrimination and filing previous complaints, when they were notified by the U.S. Department of Education (ED) that they will be terminated pursuant to a reduction in force (RIF), in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §700 et seq., and the Age Discrimination in Employment Act, as amended, 29 U.S.C. §633a et seq. (ADEA).

2. Plaintiffs further allege a violation of their individual rights as competitive service employees to transfer with their functions under an impending transfer of same, in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §700 et seq. the Age Discrimination in Employment Act, as amended, 29 U.S.C. §633a et seq. (ADEA), and 5 U.S.C. §3503.

3. Plaintiffs seek make-whole relief in the form of cancellation of the RIF, retention of their positions, compensatory damages, and reasonable attorneys fees as part of their costs.

## II.  Exhaustion of Remedies

4. Plaintiffs each contacted an EEO counselor within 45 days of the complained of events and filed timely complaints of discrimination with the defendant pursuant to the regulations of the Equal Employment Opportunity Commission (EEOC). Plaintiffs are still within the 120 days provided for the agency to accept and investigate their claims and make a final agency decision. After the Merit Systems Protection Board (MSPB) and/or the EEOC review the agency's actions, Plaintiffs may then proceed into federal District Court with the same claims. 29 C.F.R. §114.310(c)-(i).

## III.  Jurisdiction and Venue

5. Plaintiffs seek the equitable jurisdiction of the Court in order to avoid irreparable harm which will result if the agency is not enjoined from terminating them during the pendency of their administrative complaint. The Court has jurisdiction over this action pursuant to the Rehabilitation Act, 29 U.S.C. § 791 and the ADEA, 29

U.S.C. §633a(d). Pursuant to 29 C.F.R. §1614.301, once Plaintiffs have exhausted their administrative remedies, they may bring their claims of employment discrimination in federal district court. The U.S. Circuit Court of Appeals for the District of Columbia has held that "if the court may eventually have jurisdiction of the substantive claim, the court's incidental equitable jurisdiction, despite the agency's primary jurisdiction, gives the court authority to preserve the status quo pending ripening of the claim for judicial review." Wagner v. Taylor, 836 F.2d 566. 571 (D.C. Cir.1987).

6. Venue lies in this court because each of the plaintiffs is or was employed by the defendant federal agency which is headquartered in the District of Columbia, the incidents constituting discrimination took place in the District of Columbia, and the discriminatory and retaliatory employment decisions affecting Plaintiffs were made in the District of Columbia.

**IV. Description of the Parties**

7. Plaintiffs are twenty-four current and former employees of the Rehabilitation Services Administration ("RSA" or "agency"), a program component of ED's Office of Special Education and Rehabilitative Services ("OSERS"): Richard Anderson, Bryan Bashin, Keith Beichner, Joe Cordova, Mary Davis, Loerance Deaver, Michael Evans, Joseph Farrell, Marian Fuller, Martha Garber, Diana Koreski, Allen Kropp, Seymour Levy, Charles Linster, Brian Miller, Jeffrey Mitchell, John Nelson, Kathleen Niemi, Noel Nightingale, Ralph Pacinelli,

Brenda Sue Rankin-White, Bruce Rose, Janette Shell, and Jacquelyn Tellier.[1] Plaintiffs are or were each assigned to the agency's regional offices. Each plaintiff is either over the age of forty or disabled within the meaning of the Rehabilitation Act, or both.

8. Cordova, Deaver, Kropp, Nightingale, and Pacinelli are GS-101-15 Supervisory Vocational Rehabilitation (VR) Program Specialists, and serve as Regional Commissioners (RCs). Each Commissioner is responsible for two RSA regions: Kropp manages Region I (Boston) & II (New York); Pacinelli, Region III (Philadelphia) and IV (Atlanta); Cordova, Region V (Chicago) and VII (Kansas City); Deaver, Region VI (Dallas) and VIII (Denver); and Nightingale, Region IX (San Francisco) and X (Seattle).

9. Assistant Commissioner Bashin manages the Region IX office in San Francisco. Bashin Aff ¶ 4. Former Assistant Commissioner Mitchell was the Assistant Commissioner in Philadelphia prior to retiring in July 2005. Mitchell Aff ¶ 1.

10. Seymour Levy is a GS-501-13 Fiscal Specialist stationed in Region V. Kathleen

---

[1] See Ex. 1, Affidavits of Richard Anderson (hereinafter "Anderson Aff"); Ex. 2, Bryan Bashin ("Bashin Aff"); Ex. 3, Keith Beichner ("Beichner Aff"); Ex. 4, Joe Cordova ("Cordova Aff"); Ex. 5, Mary Davis ("Davis Aff"); Ex. 6, Loerance Deaver ("Deaver Aff"); Ex. 7, Michael Evans ("Evans Aff"); Ex. 8, Joseph Farrell ("Farrell Aff"); Ex. 9, Marian Fuller ("Fuller Aff"); Ex. 10, Martha Garber ("Garber Aff"); Ex. 11, Diana Koreski ("Koreski Aff"); Ex. 12, Allen Kropp ("Kropp Aff"); Ex. 13, Seymour Levy ("Levy Aff"); Ex. 14, Charles Linster ("Linster Aff"); Ex. 15, Brian Miller ("Miller Aff"); Ex. 16, Jeffrey Mitchell ("Mitchell Aff"); Ex. 17, John Nelson ("Nelson Aff"); Ex. 18, Kathleen Niemi ("Niemi Aff"); Ex. 19, Noel Nightingale ("Nightingale Aff"); Ex 20, Ralph Pacinelli ("Pacinelli Aff"); Ex. 21, Brenda Sue Rankin-White ("Rankin-White Aff"); Ex. 22, Bruce Rose ("Rose Aff"); Ex. 23, Janette Shell ("Shell Aff"); and Ex. 24, Jacquelyn Tellier ("Tellier Aff").

Niemi was a GS-343-01 Management and Program Analyst in the same region.

11. The remaining plaintiffs - Anderson (in Region II), Beichner (Region III), Davis (Region IV), Evans (Region VI), Farrell (Region I), Fuller (Region VIII), Garber (Region VI), Koreski (Region X), Linster (Region V), Miller (Region IX), Nelson (Region I), Rankin-White (Region IV), Rose (Region IV), Shell (Region V), and Tellier (Region I) - are or were GS-101-11, -12 or -13 Vocational Rehabilitation Program Specialists.

12. All of the Plaintiffs except Brian Miller are forty years of age or older. See Miller Aff ¶2.

13. Richard Anderson (age 54) is disabled on one side of his body due to a traumatic brain injury at nine months of age. Anderson Aff ¶ 2. This limits his ability to perform manual tasks.

14. Bryan Bashin (age 50) is totally Blind. Bashin Aff ¶2.

15. Keith Beichner (age 64) is hearing-impaired and has restricted visual fields in both eyes, a chronic lung condition which restricts his breathing, and a severe form of inflammatory arthritis called Ankylosing Spondylitis which restricts his ability to stand, bend, and kneel. Beichner Aff. ¶ 2.

16. Joe Cordova (age 54) is Blind. Cordova Aff ¶ 2.

17. Mary Davis (age 55) is legally Blind. Davis Aff ¶2.

18. Michael Evans (age 64) has a record of being legally Blind, and currently has impaired vision and one functional eye. Evans Aff ¶3.

19. Joseph Farrell (age 65) has Diabetes Mellitus with peripheral neuropathies and cardiac disabilities, which limit the manner in which he can eat and limit his ability to walk and perform physical tasks. Farrell Aff. ¶2.

20. Marian Fuller (age 56) has been living with systemic lupus erythmatosis, a potentially fatal auto-immune disorder, for more than twenty years. Fuller Aff ¶ 2.

21. Martha Garber (age 55) has multiple physical and mental disabilities, including one which limits her ability to perform manual tasks. Garber Aff ¶2.

22. Charles Linster (age 55) has quadriplegia resulting from an accident in 1965. Linster Aff ¶ 2.

23. Brian Miller (age 38) is totally Blind. Miller Aff ¶2.

24. John Nelson (age 53) has quadriplegia resulting from an accident at age 14. Nelson Aff ¶2.

25. Noel Nightingale (age 41) is totally Blind. Nightingale Aff. ¶2.

26. Brenda Sue Rankin-White (age 58) has Post-Polio lower extremity paralysis and uses a manual wheelchair and long-leg bilateral braces. Rankin-White Aff. ¶ 2.

27. Bruce Rose (age 53) has congenital Cerebral Palsy, which substantially limits his ability to speak and perform physical tasks. Rose Aff ¶2.

28. Janette Shell (age 54) is a Type II diabetic and has an anxiety disorder, which limits the major life activities of eating and digestion. Shell Aff. ¶2.

29. Jacquelyn Tellier (age 50) has a disabling spinal condition (scoliosis with compensatory curvature) and occupational asthma, which limits the major life

activities of breathing and the duration for which she can sit or stand.  Tellier Aff. ¶ 2.

30. Several of the Plaintiffs (e.g., Bashin, Evans, Linster, Miller, Nelson, Nightingale, and Shell) were Schedule A hires, i.e, they were hired not through the competitive process but as excepted service appointees based on their targeted disabilities. Bashin Aff.¶3; Evans Aff ¶2; Linster Aff ¶3; Miller Aff ¶3;  Nelson Aff ¶3; Nightingale Aff ¶3; Shell Aff. ¶2.  Except for Miller and Bashin, each of the Schedule A appointees in the Plaintiff group attained career competitive status after he or she successfully completed two or more years in probationary status.[2] Evans Aff ¶2; Linster Aff ¶3; Nelson Aff ¶ 3; Nightingale Aff ¶8; Shell Aff ¶3. Mr. Miller and Mr. Bashin were hired in January 2004 and will be eligible to convert to competitive status on January 26 and 27, 2006, respectively.  Miller Aff ¶ 3; Bashin Aff ¶ 3.

31. Ms. Koreski, Mr. Linster, Mr. Mitchell, and Ms. Niemi took early retirement effective July 2, 2005, rather than be terminated and lose their health insurance. Koreski Aff ¶¶9-10; Linster Aff ¶6; Mitchell Aff. ¶ 4; Niemi Aff ¶¶5,7.   Each of the retired Applicants regards his or her retirement as involuntary and a

---

[2] See 5 C.F.R. §3.1(b): "Upon recommendation by the employing agency, and subject to such requirements as the Office of Personnel Management may prescribe, the following classes of handicapped employees may acquire competitive status without competitive examination: (1) a severely physically handicapped employee who completes at least two years of satisfactory service in a position excepted from the competitive service  . . (3) an employee with a psychiatric disability who completes at least 2 years of satisfactory service in a position excepted from the competitive service."

constructive adverse action, and has filed a complaint with the Department's EEO Group. See id.

32. The other twenty Plaintiffs either are not eligible for early retirement or a buyout, or refused them because the offered terms were economically disadvantageous. See, e.g., Fuller Aff ¶9(5)("I could not afford to accept the $25,000 Buy-out offer because the after-tax amount is less than the compensation I will earn by staying on the job until Sept. 30 when the Regional Office is scheduled to close"). Each non-retiree received a RIF notice on or after July 18, 2005. See also Anderson Aff ¶ 6; Bashin Aff ¶ 5; Cordova Aff ¶ 5; Davis Aff ¶5; Deaver Aff ¶4; Evans Aff ¶ 5; Farrell Aff ¶ 4; Garber Aff ¶ 3; Kropp Aff ¶ 5; Levy Aff ¶6; Miller Aff ¶ ; Nelson Aff ¶ 6; Nightingale Aff ¶ 5; Pacinelli Aff ¶ 5; Rankin-White Aff ¶ 5; Rose Aff ¶ 5; and Shell Aff ¶7.

33. Defendant is Secretary of the Department of Education, which has authority, *inter alia*, over the hiring, firing, assignment, and terms and conditions of employment of persons employed by the Department, including but not limited to, persons working for the Rehabilitation Services Administration. Defendant is the named defendant, but is sued in her official capacity, as required by the Rehabilitation Act and ADEA. 29 U.S.C. §§ 791, 633a.

V. **Statement of the Facts**

34. The RSA Regional Offices employ a workforce of whom 43% are disabled within the meaning of the Rehabilitation Act and 92% are over 40 years of age. These characteristics make the RSA regional employees different than any other

identifiable workforce within the Department.

35. Dr. Andrew Pepin, the Executive Administrator of OSERS, of which RSA is a component, has a record of open hostility towards disabled people, especially the Blind, and informed (Blind) members of the RSA leadership team more than once that RSA employs "too many Blind people." Ex. 25, Affidavit of former RSA Commissioner Joanne Wilson (Wilson Aff.) ¶¶ 5-8.

36. The agency has also made illegal inquiries about the nature of its employees' disabilities where the employees in question have not requested accommodations. See e.g., Shell Aff. ¶12.

37. The agency has resisted hiring qualified Blind job applicants, even cancelling one vacancy after inquiring and learning that the selectee was Blind. Cordova Aff ¶8. In another instance, a highly qualified Blind applicant did not make the Best Qualified list or receive an interview after an OSERS review of the merit selection certificate, though he has qualifications that are observably superior to those of the eventual (seeing) selectee. Id. ¶9.

38. The agency has repeatedly failed to provide adequate accommodations for Blind employees who need readers. For example, two of the Blind Applicants, Bryan Bashin and Brian Miller, are required to share one reader as they go about their business during the work day. Bashin Aff ¶19; Miller Aff.¶7. Because their duties require significant amounts of travel and the agency will not permit its staff readers to travel, the Blind Plaintiffs must go through a torturous process of hiring a contract reader every time they travel on business. Id. The agency has never

claimed, much less shown, that hiring assistive employees is an undue hardship; it simply refuses to do so.

39. The RSA regional offices perform functions essential to fulfillment of RSA's statutory mandate: enforcement of the Rehabilitation Act's provisions governing the federal-State partnership to provide vocational rehabilitation services to severely disabled adults in 56 states and U.S. territories. Functions unique to the regional offices include State Plan approval, monitoring and technical assistance. The regional offices also administer several hundred discretionary and formula grant programs that are competed but not administered by any agency staff currently stationed at headquarters.

40. In February 2005, the agency announced plans to close the RSA regional offices and "consolidate" the functions thereof in agency headquarters. The primary alleged reason for the closures is the need to reduce ED headcount by 66 people - the exact number of regional RSA employees. This agency action solely and disparately impacts the Plaintiffs and their disabled and older colleagues.

41. In February 2005, when the closures were announced, the Department's total number of Full-Time employees (FTEs) was below the ceiling in the FY2006 Budget which is the basis for the agency's claim that it is necessary to close the RSA regional offices and terminate the regional staff as a whole.

42. Though the ED budget for FY2006 has not yet been signed into law, the Appropriations committees os both Houses of Congress have recommended funding for all of RSA's programs at levels at or exceeding the levels requested by

the Department. OSERS will receive an additional $300 million to administer in FY2006.

43. The regional employees who did not accept a "voluntary early retirement" offer during a brief window in May and June 2005 received RIF notices in July 2005 stating that their employment and health insurance will be terminated effective September 30, 2005. Because the closures and RIF disproportionately impacts the RSA regional workforce, which contains high percentages of disabled and older workers, they violate the Rehabilitation Act and the ADEA.

44. Agency officials deny that a transfer of function has taken place and thus have failed to offer transfers to any of the affected employees who currently perform these functions. Instead, the central office staff, which has significantly fewer disabled employees, will take over the regional office functions. The vacancies that will be created at headquarters were announced competitively only after the window for accepting the early retirement/buy-out offer closed.

45. The agency directed all disabled regional employees to apply for the new headquarters positions under Schedule A, thereby imposing discrete requirements on them and classifying or segregating them from their non-disabled colleagues.

46. The agency also announced a change to its policy that assistive employees hired as accommodations for Blind or deaf employees will be counted: after September 30, 2005, such employees will be counted and paid by the individual program components that employ the disabled employees who need the accommodations. Currently, and for the last several years, the agency had paid such employees from

a pool managed by the Office of Management in order to facilitate the hiring of qualified disabled persons notwithstanding program budget pressures. The new policy is a clear disincentive for programs to hire disabled applicants who may require the reasonable accommodation of a reader, an interpreter or the services of any other assistive employees. To date the selectees for the available positions have not included any disabled employees who require accommodations.

### VI.  Statement of the Claims

47. Based upon the facts set forth in paragraphs 1 - 46, plaintiffs will be terminated effective September 30, 2005 because of their age and/or disability and/or in reprisal in violation of the Rehabilitation Act, the ADEA, causing plaintiffs financial and other irreparable injuries not remediable by an award of money damages.

48. Based upon the facts set forth in paragraphs 1- 46, plaintiffs' positions will be eliminated effective September 30, 2005 because of their age and/or disability and/or in reprisal in violation of the Rehabilitation Act, the ADEA, causing plaintiffs financial and other irreparable injuries not remediable by an award of money damages.

49. Based upon the facts set forth in paragraphs 1- 46, those plaintiffs who are competitive status federal employees have been denied the right to transfer with their functions because of their age and/or disability and/or in reprisal in violation of the Rehabilitation Act, the ADEA, and 5 U.S.C. §3503, causing plaintiffs financial and other irreparable injuries not remediable by an award of money

damages.

## PRAYERS FOR RELIEF

Wherefore, plaintiffs request that the Court:

a. Declare that defendant has violated the Rehabilitation act and the ADEA with respect to plaintiffs;

b. Declare that defendant has violated 5 U.S.C. §3503 with respect to the plaintiffs who are competitive status federal employees;

c. Enjoin defendant from further discrimination against plaintiffs;

d. **Immediately restrain and enjoin defendant from terminating plaintiffs effective September 30, 2005 and from eliminating their positions during the pendency of their administrative exhaustion-of-remedies phase;**

e. Award each plaintiff monetary damages to the maximum extent allowed by law;

f. Award plaintiffs attorneys fees as part of their costs; and

g. Award plaintiffs any other legal and equitable relief to which they are entitled by the evidence.

**JURY DEMAND**

Plaintiffs request a trial before a jury of all Rehabilitation Act and ADEA claims triable to a jury once they have exhausted their administrative remedies.

Respectfully submitted,

___/s/ June D.W. Kalijarvi_____
June Kalijarvi (D.C. Bar No. 183863)
George Chuzi (D.C. Bar No. 336503)
Kalijarvi, Chuzi & Newman, PC
1901 L Street, NW
Suite 610
Washington, D.C. 20036
Tel: (202) 331-9260
Fax: (202) 331-9261
Attorneys for Plaintiffs