8/15/05

## AFFIDAVIT

Under penalties of perjury, **MARIAN FULLER** swears and affirms that the following is true to the best of her knowledge:

1. I am an employee of the U.S. Department of Education, Office of Special Education and Rehabilitative Services (OSERS), Rehabilitation Services Administration (RSA). My position is GS-101-13, Step 10 Vocational Rehabilitation Program Specialist in RSA Region VIII (Denver).

2. My date of birth is February 19, 1949 (56 years). I am an individual with a disabling medical condition, though I have not nor do I intend to seek Schedule A status. I was diagnosed in the early 1980s with systemic lupus erythmatosis, an auto-immune disease that can be fatal, and have a well-documented medical record. I take personal pride in having "controlled" my condition since my diagnosis over twenty years ago and have refused—until now—to use my illness as a rational for employment or working conditions. Over the years, I have had several lupus flares that have caused me grave discomfort, joint/muscle pain, skin inflammation and other ailments related to my condition. Since RSA has not always had the funds to purchase office equipment or special accommodations when staff needed them, I have personally paid for my own computer desk and chair. When I required extra lighting after eye surgery the Regional Office requested improved lighting in my work area. When the request was refused due to lack of equipment funds I personally paid for desk lamps that I've placed around my work area to help me see better. Until now, I have never tried to impose my condition or the hardships it has caused on my co-workers or on RSA.

3. I have been in the Federal service for 17 years, all at RSA. I had eight years of State Vocational Rehabilitation experience prior to joining RSA. This totals 25 years that I've worked in the VR program. I have devoted nearly half of my life to this program.

4. My current assignments include serving as Team Leader (for six years) overseeing Regional Office staff numbering from one to four people; State Representative for three State VR agencies; Regional Independent Living Specialist; National Transition Services expert; and the Regional Functional Specialist in the areas of American Indian VR, Workforce Investment Act, Ticket to Work, and Special Projects (e.g., Recreation grants).


EXHIBIT 9

Marian Fuller Affidavit – page 2                              8/15/05

5. My current primary job duties are as follows:
- Conduct onsite reviews of State VR agencies, Centers for Independent Living as the Team Leader of the reviews
- With a high degree of independence, I write reports describing the results of onsite monitoring reviews containing an analysis of data, description of findings concerning compliance issues, develop recommendations for grantees to correct compliance issues.
- I independently review and recommend approval of State plans for the State VR program (Title I) and the IL program (Title VII)
- I independently provide ongoing technical assistance to grantees
- I independently prepare and present oral presentations and training to grantees (during National and Regional training events and conferences)
- Participant on numerous National workgroups concerning WIA, TWWIIA, American Indian Rehabilitation, Transition, Employment initiatives, etc. (these groups were recently curtailed when efforts to reorganize RSA got underway).
- Mentor other staff and review their work.
- Oversee day-to-day office operations.
- Represent the Regional Office at meetings with constituents, other Federal agencies, other ED agencies co-located in the Denver Region, representatives of grants (i.e., during regional meetings/training events involving State agency representatives, Centers for Independent living, Indian tribes administering RSA-funded grants, etc.).
- With a high degree of independence I draft, write and review policies, letters and reports with interpretations of Rehabilitation law and related regulations.

6. Currently, I am being forced to accept either: (1) an earlier-than-anticipated retirement or (2) in the event I am selected for a position in the "new" RSA, a move to Washington, D.C. Both options are undesirable, unplanned and profoundly unwelcomed. Under the Federal Employee Retirement System, if I retire now, my annuity will be significantly cut because I'm 56 years old. The penalty of 5% per year for every year I am under age 62 will leave me with a monthly annuity of only $629 after I pay taxes and my costs of health insurance. On the other hand, if I move to D.C., my family will suffer an undue hardship caused by the financial burden of selling our home and taking on a new mortgage at this late stage in my husband and my careers. The disruption caused in my personal life by moving cross-country will make me unavailable to assist an aging parent and parent-in-law that my spouse and I assist. And it's a well-known fact that stress can trigger a lupus flare. Can there be anything more stressful than moving cross-country or losing one's job?

Marian Fuller Affidavit – page 3                               8/15/05

7. For the past seven years, the Denver Office has been one of the tiniest among RSA's unit: FTEs have ranged from one (i.e., me) to four at various times as staff have left and OSERS has been slow to fill vacancies. Through it all, I have endeavored to maintain the highest professionalism by keeping the office running on a regular schedule, making myself routinely available to RSA management, grantees and consumers served by our program, picking up assignments that others vacated when they left the agency, becoming a Jack-Of-All-Trades and handling matters requiring immediate attention when no one else was available.

8. I have always received performance ratings of "high satisfactory" or "outstanding" throughout my seventeen years of service. I can produce numerous letters of commendation that RSA grantees have written to express their appreciation for a job well done.

9. If I am unable to secure a position in headquarters and/or unable to telecommute or negotiate an arrangement with management to compensate me for the damage to my career and financial stability, I will be forced to retire at least six years earlier than I had planned. Early retirement will place an extreme hardship on me due to the severe penalties imposed by FERS' retirement rules.

    My specific situation is as follows: I have worked for the Federal government for 17 years exclusively under FERS. I am 56 years old. I am now facing a RIF. ***Given these circumstances, I do not qualify for many of the employee benefits that other Federal workers facing a RIF have available to them because:***

    (1) I do not qualify for a hefty severance payment because I meet the minimum age and years-of-service requirements to retire under FERS.

    (2) I do not qualify for retirement under the "early out" rules because I'm 3 years shy of the minimum 20 years needed to qualify.

    (3) I do not qualify for a Federal benefit to supplement my reduced annuity check due to an "involuntary separation" until I reach age 62 and qualify for Social Security because I do not have the 20 years of service required.

    (4) I will not qualify for unemployment insurance if I voluntarily separate from Federal service.

Marian Fuller Affidavit – page 4                                8/15/05

(5) I could <u>not</u> afford to accept the $25,000 Buy-Out offer because the after-tax amount is less than the compensation I will earn by staying on the job until Sept. 30 when the Regional Office is scheduled to close.

(6) I will <u>not</u> qualify for health insurance if I simply separate from Federal service on Sept. 30 when the Regional Office closes.

(7) I will <u>be forced to unwillingly accept</u> an enormous cut in my annuity of 5% for each of the 6 years I'm under age 62 because I cannot risk losing my health insurance due to my potentially life-threatening condition.

Mr. Hager is on record as saying he does not want to harm the Regional Office employees by this RIF. Unfortunately, my scenario does immediate and long-term irreparable harm. The RIF leaves my career and my family's finances in shambles. The circumstances created by this RIF are not unlike the times when children of aging parents who can no longer care for themselves are forced to choose among options that are all undesirable. After 17 years with RSA and eight years prior to RSA in State government one would like to think there would be a better way to compensate employees who have been loyal, dedicated, reliable, hard working, productive and given so much of their life to public service.

_Marian T. Fuller_             _8/15/05_
Marian Fuller                              Date