# AFFIDAVIT

Under penalties of perjury, **ALLEN L. KROPP** swears and affirms that the following is true to the best of his knowledge:

1. I am an employee of the U.S. Department of Education, Office of Special Education and Rehabilitative Services (OSERS), Rehabilitation Services Administration (RSA). My position is GS-101-15 Supervisory Vocational Rehabilitation Program Specialist (Regional Commissioner) for RSA Regions I (Boston) and II (New York City).

2. My date of birth is July 10, 1965.

3. I joined RSA five years ago, and have served as Regional Commissioner for 2 years and 8 months.

4. As Regional Commissioner, I review and approve grantee plans for funding under Rehabilitation Act (Act) programs; develop facilitate and manage program changes, including the allocation of scarce resources among major rehabilitation programs; establish and revise program and financial operating procedures; review and monitor grantee operations; aggregate and access program data; and provide high-level technical assistance to internal and external customers, constituents and stakeholders. I supervise a staff in two geographically separate regional offices in Boston and New York City covering ten states and territories, with vastly different political environments and service delivery needs. I am responsible for providing leadership, technical assistance, consultation and support to State Vocational rehabilitation agencies (General, Combined and Blind) and to other public and private agencies and universities contributing to the vocational rehabilitation, supported employment and independent living of individuals with disabilities.

5. I received a notice of reduction in force on July 18, 2005 which informed me that my position will be eliminated and I will be separated from federal service effective October 1, 2005.

6. I am the sole breadwinner for my wife and three young children (ages 10, 7, and 2). My elimination from the organization -- when my performance has been outstanding and my scope of work responsibilities and contributions to the organization have been extensive (and possibly unmatched) -- will have an enormous personal toll on me and my family, all of whom rely on me and my career (i.e., my salary and my benefits) to sustain them now and in the future. Financially, the loss of my GS-15 salary will leave me unable to pay an existing mortgage on my home and cause other immediate financial hardships in terms of my inability to support, and provide for the health and welfare of, my family of five. Furthermore, my son has congenital heart disease, underwent three open-


EXHIBIT 12

heart surgeries in his first six years, and must continue to receive regular medical attention from specialists near home who know him best -- a further and obvious reflection of the critical importance of my government-supported health insurance plan to my family.

7. The fraudulent tactics utilized by OSERS managers to remove me from my position are as follows: at the time I was offered the Regional Commissioner position, I was working full-time as a policy advisor and program specialist in the RSA Commissioner's Office through a telecommuting arrangement from my home (in Maine). After the former Commissioner of RSA asked me to become the permanent Regional Commissioner (for Regions I & II) following my predecessor's retirement, OSERS management quickly supported her decision and fast-tracked my appointment, their reasons being that they were not supportive of my telecommuting arrangement and saw an opportunity to reduce their number of telecommuting employees by reassigning me to the Regional Commissioner post (It is important to note that a number of Washington D.C.-based employees continue to work under existing telecommuting arrangements, including a current policy advisor and program specialist in the Commissioner's office telecommuting from his home in Illinois). Thus, OSERS supported and readily facilitated my move from an existing and secure policy-related job (at Grade 15) to my Regional Commissioner position which, it is now clear, they hoped to eliminate (and are now doing so through the current reduction in force). I regard the agency's actions as deceitful and unjustified in view of my tremendous work record, the personal sacrifices I have made throughout my career in order to carry out OSERS' and the Department's mission (e.g., my history of working long hours, weekends, and vacations, and my significantly broad workload in covering activities well beyond my stated responsibilities), and the clear disregard OSERS has shown for my efforts and contributions, for me, and for my family.

8. The closure of the RSA regional offices will severely diminish RSA's ability to implement, monitor and improve programs, projects and activities in the field. It will have a devastating effect on RSA's support for the VR an other rehabilitation Act programs on which persons with disabilities rely, as well as on RSA regional staff and their families, 43 percent of whom are highly qualified people with significant disabilities. The closure also sends the message to the community that OSERS/RSA practices discrimination toward its own staff and engages in subterfuge by removing a targeted class of employees under the pretext of a planned reorganization. Moreover, the closure reflects a complete disregard for Office of Personnel Management rules and policies as evidence, for example, by management's coercive tactics (e.g., in pressing individual to take buyout offers) and by management's unsubstantiated position that it is not transferring functions

between offices (allowing for a rushed reorganization and the summary dismissal, rather than transfer, of affected employees).

_____  
Allen L. Kropp

_8/9/05_____  
Date