# AFFIDAVIT

Under penalties of perjury, **NOEL J. NIGHTINGALE** swears and affirms that the following is true to the best of her knowledge:

1. I am an employee of the U.S. Department of Education, Office of Special Education and Rehabilitative Services (OSERS), Rehabilitation Services Administration (RSA). My position is GS-101-15 Supervisory Vocational Rehabilitation Program Specialist (Regional Commissioner) for RSA Regions IX (San Francisco) and X (Seattle).

2. I am a female and my date of birth is August 22, 1964. I am an individual who is blind.

3. I joined RSA two years ago (on July 14, 2003), and was hired into the Excepted Service under the Schedule A hiring authority for bringing individuals with disabilities into federal service.

4. As Regional Commissioner, I review and analyze plans and develop, facilitate, and manage program changes, including the allocation of scarce resources among major rehabilitation programs; establish and revise program and financial operating procedures; review grantee operations; aggregate and access program data; and provide high-level technical assistance to internal and external customers and other stakeholders. I supervise a staff in two geographically separate regional offices in Seattle and San Francisco covering eight states and three territories, each with vastly different political environments and service delivery needs. Those states and territories are: Alaska, Washington, Idaho, Oregon, California, Nevada, Arizona, Hawaii, American Samoa, Guam, and the Commonwealth of Northern Mariana Islands. I am responsible for providing leadership, technical assistance, consultation and support to RSA grantees including state vocational rehabilitation agencies, other public and private agencies and universities contributing to the vocational rehabilitation and independent living of individuals with significant disabilities. I am also responsible for formally monitoring RSA grantees in my assigned areas of responsibility.

5. I received a notice of reduction in force on July 18, 2005 which formally notified me that my position will be eliminated and I will be separated from federal service effective October 1, 2005.

6. When I applied for the position with RSA, I did so through both the competitive process and under Schedule A. I was aware when I applied that OSERS was hostile to Blind individuals generally, and members of a self-help organization of blind and visually-impaired individuals specifically (the National Federation of the Blind). Therefore, to avoid unlawful discrimination due to my disability or my association with the National Federation of the Blind, when I applied I emphasized my disability rather than my blindness. I also did not include my involvement with the National Federation of the Blind on my resume. I did inform the Department's Ethics Division once I was offered a position, and resigned from the



EXHIBIT 19

offices I held with the National Federation of the Blind and the National Federation of the Blind of Washington as required by federal ethics rules.

7. Shortly after reporting for duty, I became aware that OSERS' hostility to its Blind employees had increased. The RSA Commissioner informed RSA's leadership team that she had been warned by OSERS leadership that they believed she was hiring too many blind people. In my own recruitment and selection of new employees, I experienced OSERS' scrutiny of the disabling conditions of potential employees. As an example, after I submitted Brian Miller's name as the individual I selected to fill a VR Program Specialist position in San Francisco, and before his selection was approved by OSERS, the OSERS personnel specialist called me to inquire what Brian's disability was. When I asked her why she was inquiring, she indicated that OSERS leadership wanted to know. I believe that my selection of Brian Miller would have been rejected by OSERS if the RSA Commissioner herself had not at that time been adamant with OSERS and strenuously rejecting the notions that she was hiring too many blind people and that she should discriminate against the Blind.

8. I was converted from the Excepted Service to Career Conditional Service in July 2005.

9. I resigned from my prior position as Assistant Director with the Washington State Department of Services for the Blind to assume my current position with RSA. In so doing, I left a position in the rehabilitation field that was of significant responsibility, and which I enjoyed. I cannot return to that position, and would not have left it had I known that my position with RSA would be eliminated within two years of my assuming it.

10. At the time I assumed the RSA position, my husband quit his night job with Street Youth Ministries, a shelter for homeless youth, in order that our children--now ages six months, two and half years, and five and a half years--would be cared for properly while I traveled extensively for RSA. I am, therefore, the sole breadwinner for a family of five. Unfortunately, I am forced to expend our family's resources to ensure that the Department does not discriminate against me and follows federal personnel rules. My current income pays for the cost of housing, food, clothing, car insurance, my children's pre-school education, and all of our other costs of living. Because we have a mortgage of approximately $540,000, the loss of my income will mean that we will be unable to make payments and may lose our home. The loss of my health care benefits will mean that I need to purchase health care insurance for my family in the amount of approximately $800.00 per month. Because I have been employed with RSA for only two years, I have no retirement or significant thrift savings plan assets to rely on, and was not eligible to take early retirement or a buy out because I am not old enough and had not been employed by the federal government for the required time.

11. I have experienced discrimination because of my blindness. I am afraid that it will be difficult for me to locate a suitable position to support my family because I am blind.

12. I am competing for the few Washington, D.C., area positions vacant in RSA. However, because I am Blind, I will need the accommodation of a reader. Under a Department policy, a reader for me will be counted against RSA's new 81 employee ceiling. This creates a

substantial disincentive for selecting me for any of the new positions (in addition to the disincentives created by the substantial relocation expenses the Department would incur).

_____          08/09/2005
Noel J. Nightingale                Date