## AFFIDAVIT

Under penalties of perjury, **JANETTE SHELL** swears and affirms that the following is true to the best of her knowledge:

1. I am an employee of the U.S. Department of Education, Office of Special Education and Rehabilitative Services (OSERS), Rehabilitation Services Administration (RSA). My position is GS-101-13, Step 2 Vocational Rehabilitation Program Specialist in RSA Region V (Chicago).

2. I am fifty-four years old. I was hired under Schedule A on February 26, 2001 and qualified because I am a Type II diabetic and have a general anxiety disorder. I qualified for Schedule A because of the combination of the two conditions.

3. I was converted to career-permanent position in February 2003. I was credited with two years of federal service as a VISTA volunteer on May 31, 2005, which gives me over 6 years of federal service.

4. In Region V, Chicago, I am responsible for monitoring the services provided by state VR agencies in Ohio, Minnesota (2 agencies) and Wisconsin. In that regard, I plan monitoring reviews, assemble a review team, prepare for those reviews by researching, reviewing and analyzing program performance data, state agency policies, and other materials. To complete the review, I write a report of findings (45 – 50 pages in length) synthesizing the review information. I also provide technical assistance on a variety of policy interpretation and other implementation issues to state agencies, consumers and other stakeholders. All of this requires research, review and application of federal law and regulation.

5. I perform similar functions as an Independent Living Specialist, reviewing state VR agency performance and administration as well as individual Centers for Independent Living that receive federal funds directly from RSA. I also review and approve State Plans for Independent Living. In this capacity, I have been in a continuous review mode of the Indiana Council for Independent Living and the Indiana Division of Disability, Aging and Rehabilitative Services, based upon an on-site review in May, 2002. The problems and report of findings have been high profile, and have brought to light several issues of national significance. I also researched, analyzed and prepared a position paper on the placement of the Wisconsin Statewide Independent Living Council that resulted in finding this body out of compliance with federal law and in requiring a plan of correction.

EXHIBIT 23

6. I am also the Region V Social Security Specialist, Employment Specialist, Long-term Training Specialist, and Projects-With-Industry Specialist. As the Social Security Specialist, I formed a region-wide workgroup of state agency personnel involved in implementation of the Ticket to Work program and have been a presenter on this subject at various meetings. In FY 2002, I was selected as a member of the Institute on Rehabilitation Issues Prime Study Group on Transition services for youth and am listed as such in the document produced by the group entitled <u>Investing in the Transition of Youth with Disabilities to Productive Careers.</u>

7. On July 18, 2005, I received a notice of reduction in force that indicated that I will be separated from federal service effective September 30, 2005.

8. The closure of RSA Regional offices impacts my life negatively in several ways. My career plans were to maintain employment with RSA until retirement 8-10 years from now while advancing into promotional positions that require my expertise and skills. With this closure, and no transfer along with my functions, I am not able to advance within the organization as I had hoped. Because I must have a minimum of one year in Grade 13 in order to advance/compete for a GS-14 position, I will not be able to apply for GS-14 positions available within the reorganized RSA. Therefore, I am limited to applying for two positions at GS-13 levels either within the VR programs unit or the Technical Assistance Unit.

9. Because I am a female with a disability over the age of 40, I will likely find it difficult to compete successfully in the job market. The Department has decided not to extend assistance in retaining employment with other components within the Dept. of Ed in Region V or within the reorganized RSA in D.C. My performance evaluations have been outstanding and I have earned two Quality Step Increases since I began as well as a promotion to GS-13 level. I believe I have earned a reputation for quality work but have not been valued in the reorganization process by the Department for that quality work.

10. At every opportunity to help employees losing their jobs, the Department has chosen to take the step that provided the least help or support for those employees. The Department tried to keep their decision to close a secret, but we learned of it through a "leak" on January 27, 2005. The Department told us little or nothing between January 27 and May of its plan, timeframes for change, etc. While keeping us in the dark, OSERS began a plan of work priorities, short timeframes, and added responsibilities that heaped pressure and stress on regional office employees already stressed about losing their jobs. This exacerbated my

anxiety issues. If I am unable to maintain federal employment, I will be unable to afford health insurance under COBRA and, therefore, unable to obtain medication and treatment I need to be a successful job applicant and a productive employee.

11. I am a relatively recent hire, and purchased a home in Gary, Indiana 2 years ago that is steps away from Lake Michigan beaches. Financially, I had just begun to recover from this move. Also, financially, I have taken on $40,000 in college loans for my son Charles at the University of Maryland, College Park. I had anticipated being able to pay these as I continued federal employment at my current, and future, salaries. Considerable worry and pressure results from having huge college education loans, a new home loan, and losing your job with no consideration for retaining a skilled employee.

12. I should mention an event that I feel is important when considering the possibility of disability discrimination. In August of 2004, Darlene Thornton called me, after trying to reach me through Diana Hayes and Joe Cordova of the Region V office. Darlene works for Dr. Paul O'Connell, Director, Management and Support Staff, Office of the Assistant Secretary, U.S, Department of Education. Darlene asked me what my disability was. I asked for the purpose of her question, and she first told me that they did not have a record of it, only that I was hired under Schedule A. I asked again why she would need this information. Darlene indicated that they were working on the budget and were trying to determine what the costs for employee accommodations would be for the next fiscal year. I told Darlene that I would not require accommodations on my job. Darlene's initial and subsequent inquiries were not legal.

_Janette Shell_      8-9-05
Janette Shell        Date