UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Richard Anderson<br>6665 Colonial Rd<br>Brooklyn, NY 11220<br><br>Bryan Bashin<br>409 21st Street<br>Sacramento, CA 95814-1116<br><br>Joseph Cordova<br>2413 Kuhio Ave., #205<br>Honolulu, HI 96815<br><br>Loerance Deaver<br>10532 Royal Chapel Dr.<br>Dallas, TX 75229<br><br>Michael Evans<br>10611 DeBercy Ct.<br>Dallas, TX 75229<br><br>Joseph Farrell<br>P.O. Box 1164<br>Coventry, RI 02816<br><br>Marian Fuller<br>6155 Bobcat Bluff<br>Littleton, CO 80124<br><br>Martha Garber<br>120 Heather Glen<br>Coppell, TX 75019<br><br>Diana Koreski<br>6510 284th Ave., SE<br>Issaquah, WA 98027<br><br>Seymour Levy<br>2800 N. Lake Shore Dr.<br>Chicago, IL 60657 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     **Civil Action No. 1:05CV01855 (RMC)** |

| | |
|---|---|
| Charles Linster | ) |
| 500 W. Belmont Ave | ) |
| Chicago, IL 60657 | ) |
| | ) |
| Brian Miller | ) |
| 5937 Monticello Rd. | ) |
| Alexandria, VA 22303 | ) |
| | ) |
| Jeffrey Mitchell | ) |
| 392 Roberts Drive | ) |
| Somerdale, NJ 08083 | ) |
| | ) |
| John Nelson | ) |
| 103 Kimball Rd. | ) |
| Amesbury, MA 01913 | ) |
| | ) |
| Kathleen Niemi | ) |
| 304 Scotts Court | ) |
| Bolingbroke, IL 60440 | ) |
| | ) |
| Noel Nightingale | ) |
| 3800 S. Ferris Place | ) |
| Seattle, WA 98144 | ) |
| | ) |
| Ralph Pacinelli | ) |
| 600 Old School House Dr. | ) |
| Springfield, PA 19064 | ) |
| | ) |
| Bruce J. Rose | ) |
| 430 Lindbergh Drive NE | ) |
| Atlanta, GA | ) |
| | ) |
| Janette Shell | ) |
| 3810 Lighthouse Way #25 | ) |
| Beltsville, MD 20705 | ) |
| | ) |
| Jacquelyn Tellier | ) |
| 42 8th Street, #5412 | ) |
| Charlestown, MA 02129, | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |

|                                                        |   |
|--------------------------------------------------------|---|
| Margaret Spellings, Secretary                          | ) |
| U.S. Department of Education                           | ) |
| 400 Maryland Ave., SW                                  | ) |
| Washington, D.C. 20202                                 | ) |
| in her official capacity,                              | ) |
|                                                        | ) |
| Defendant.                                             | ) |
| _____                | ) |

# AMENDED COMPLAINT FOR RELIEF
# FROM EMPLOYMENT DISCRIMINATION

**I.     Nature of the Claim**

　　1.     This is an action by the twenty above-identified Plaintiffs alleging discrimination in federal employment on the basis of disability and age, reprisal for opposing unlawful discrimination and filing previous complaints, when they were notified by the U.S. Department of Education (ED) that they will be terminated pursuant to a reduction in force (RIF), in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §700 et seq., and the Age Discrimination in Employment Act, as amended, 29 U.S.C. §633a et seq. (ADEA).

　　2.     With the exceptions of Mr. Bashin and Mr. Miller, the Plaintiffs further allege a violation of their individual rights as competitive service employees to transfer with their functions under an impending transfer of same, in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §700 et seq., the Age Discrimination in Employment Act, as amended, 29 U.S.C. §633a et seq. (ADEA), and 5 U.S.C. §3503 (governing the rights of competitive service employees to transfer with their functions).

　　3.     Plaintiffs Bashin, Cordova, Deaver, Farrell, Garber, Nelson, Pacinelli, Rose, and Tellier allege that the agency discriminated against them, in violation of the Rehabilitation Act

and the ADEA when they were terminated effective September 30, 2005 pursuant to the challenged RIF.

4.      Plaintiffs Fuller, Koreski, Linster, Mitchell, and Niemi further allege that they agency constructively discharged them when it left them with no option but to retire on or before September 30, 2005, in order to avoid being terminated pursuant to the challenged RIF.

5.      Plaintiffs Farrell, Garber, Nelson, and Tellier further allege that the agency discriminated against them and violated their right, under the Rehabilitation Act, to be reasonably accommodated for their disabilities when the agency summarily denied their requests for same in September 2005, instead terminating them pursuant to a RIF.

6.      Plaintiffs Evans and Nightingale further allege that they were constructively discharged by the agency in that the agency left them no choice but to retire effective January 1, 2006 and to resign effective November 25, 2005, respectively, in violation of the anti-retaliation provisions of the Rehabilitation Act and the ADEA.

7.      Plaintiffs Anderson, Evans, Farrell, Fuller, Garber, Levy, Miller, Nelson, Nightingale, Shell, and Tellier further allege that the agency discriminated against them when, on September 28, 2005, the agency offered them positions which would require them to relocate but denied them the relocation benefits which it routinely offers to other, similarly-situated employees who relocate for the convenience of the government.

8.      Plaintiffs Bashin, Cordova, Deaver, Mitchell, Nightingale, and Pacinelli further allege that the agency discriminated against them on the bases of reprisal and age and/or disability and/or race when it failed to select them for the position of Supervisory Vocational Rehabilitation Specialist under Vacancy Announcement OSERS-2005-0019, instead selecting a

younger, non-disabled White male.

9. Plaintiffs Bashin, Cordova, Deaver, Fuller, Garber, Mitchell, Nelson and Pacinelli further allege that the agency discriminated against them on the bases of reprisal and/or age and/or disability and/or race when it did not select them for each of eight vacancies advertised under Vacancy Announcement OSERS-2005-0018, instead selecting younger, White female candidates.

10. Plaintiffs Bashin, Cordova, Deaver, Fuller, Garber, Mitchell, Nelson and Pacinelli further allege that the agency discriminated against them when it failed to announce Vacancies OSERS-2005-46 and OSERS-2006-001 until after they had been terminated or constructively discharged, thereby depriving them of the priority consideration to which they would have been entitled under the agency's Career Transition Assistance Program (CTAP) had the vacancies had been posted while they were still employed.

11. Plaintiffs Nightingale and Shell further allege that the agency discriminated against them on the bases of reprisal, age and disability when, during September and October 2005, the agency altered its CTAP policy so as to deprive them of priority consideration for vacancies in the regional Civil Rights offices advertised under Announcements OCR 2005-056 and RBX-05-03, among others.

12. Plaintiffs seek declaratory, injunctive, and make-whole relief in the forms of (1) cancellation of the RIF, (2) restoration of their positions, (3) an award of any and all appropriate backpay and benefits, (4) cancellation and correction of each and every selection process found to be discriminatory, (5) compensatory damages, and (6) reasonable attorneys fees and other legal costs.

II. **Jurisdiction and Venue**

13.     The Court has jurisdiction over this action pursuant to the Rehabilitation Act, 29 U.S.C. § 791 and the ADEA, 29 U.S.C. §633a(d).  Pursuant to the regulations of the Equal Employment Opportunity Commission (EEOC), Plaintiffs contacted an EEO counselor within 45 days of the discriminatory incidents enumerated in ¶¶ 1-4, *supra*, and timely filed complaints of discrimination with the defendant.  Plaintiffs filed their formal consolidated complaints [hereinafter "original complaint"] in two groups, on June 28 and July 20, 2005.  They subsequently amended the original complaints on July 20 and August 2, 2005, respectively.[1] Because

(A)     more than 180 days have passed since the filing of the last accepted amendments to the original claims (filed in late July and early August 2005); and

(B)     no Final Agency Decisions (FAD) have issued relative to any of the "mixed" original claims despite the passage of more than 120 days since filing,[2]

the agency properly notified the Plaintiffs on May 15, May 17 and May 30, 2006

---

[1] On September 20, 2005, Plaintiffs filed a Complaint in the U.S. District Court for the District of Columbia solely to invoke the equitable jurisdiction of the Court relative to their Application for a temporary restraining order/ preliminary injunction.  The Application was denied following a hearing on Motions held September 29, 2005.  On October 12, 2005, the Complaint was dismissed without prejudice by an Order entering a Stipulation of Dismissal "without prejudice to the plaintiffs' future standing to seek resolution of their claims in federal court."  FED. R. CIV. P. 41(a)(1)(ii).

[2] A "mixed case" complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB).  5 U.S.C. § 7702; 29 C.F.R. § 1614.302(a).  The MSPB has appellate jurisdiction, *inter alia*, over separations, demotions, or furloughs for more than 30 days "when the action was effected because of a reduction in force."  5 C.F.R. §1201.3(a)(10).

that they may take their original complaints directly to federal district court. 29 U.S.C. §§794, 794a; 42 U.S.C. §2000e-16(c); 29 C.F.R. §1614.310(a); 29 C.F.R.§ 1614.201(c)(1).

   14. Pursuant to the agency's instructions, Plaintiffs contacted an EEO counselor timely relative to the events complained of in ¶¶ 5-11, *supra,* and timely filed their formal consolidated complaints on February 7, 2006 [hereinafter "new complaints"]. Because no FAD has yet issued despite the passage of more than 120 days since the filing of the new complaints, Plaintiffs may now take all "mixed case" claims in the new complaints directly to federal district court because Plaintiffs have again satisfied the requirement to exhaust administrative remedies. 29 C.F.R. §1614.310(a). Those claims in the new complaints which are not "mixed," i.e., which do not involve any allegations which are appealable to the MSPB, are nevertheless inextricably intertwined with the accepted issues in the mixed cases, arise from the same nucleus of operative fact, and will be eligible for joinder with the instant complaint effective August 6, 2006, the 180th day after filing of the new complaints. 42 U.S.C. §2000e-16(c); 29 C.F.R.§ 1614.201(c)(1).

   15. Venue lies in this court because each of the Plaintiffs is or was employed by the defendant federal agency which is headquartered in the District of Columbia, the incidents constituting discrimination took place in the District of Columbia, and the discriminatory and retaliatory employment decisions affecting Plaintiffs were made in the District of Columbia. Furthermore, Plaintiffs Miller and Shell are now employed by the agency in its headquarters in the District of Columbia.

### III. Description of the Parties

   16. Plaintiffs are twenty current and former employees of the Rehabilitation Services

Administration ("RSA" or "agency"), a program component of ED's Office of Special Education and Rehabilitative Services ("OSERS"): Richard Anderson, Bryan Bashin, Joe Cordova, Loerance Deaver, Michael Evans, Joseph Farrell, Marian Fuller, Martha Garber, Diana Koreski, Seymour Levy, Charles Linster, Brian Miller, Jeffrey Mitchell, John Nelson, Kathleen Niemi, Noel Nightingale, Ralph Pacinelli, Bruce Rose, Janette Shell, and Jacquelyn Tellier. Plaintiffs are or were each assigned to the agency's regional offices. Each plaintiff is either over the age of forty or disabled within the meaning of the Rehabilitation Act, or both.

17. Prior to October 1, 2005, Cordova, Deaver, Nightingale, and Pacinelli were GS-101-15 Supervisory Vocational Rehabilitation (VR) Program Specialists, and served as Regional Commissioners (RCs). Each Commissioner was responsible for two RSA regions: Pacinelli managed Region III (Philadelphia) and IV (Atlanta); Cordova, Region V (Chicago) and VII (Kansas City); Deaver, Region VI (Dallas) and VIII (Denver); and Nightingale, Region IX (San Francisco) and X (Seattle).

18. Prior to October 1, 2005, Former Assistant Regional Commissioner Bashin managed the Region IX office in San Francisco. Former Assistant Regional Commissioner Mitchell was the Assistant Commissioner in Philadelphia prior to retiring in July 2005.

19. Prior to October 1, 2005, Seymour Levy worked a GS-501-13 Fiscal Specialist stationed in Region V. Kathleen Niemi served as a GS-343-01 Management and Program Analyst in the same region.

20. The remaining plaintiffs - Anderson (in Region II), (Region VI), Farrell (Region I), Fuller (Region VIII), Garber (Region VI), Koreski (Region X), Linster (Region V), Miller (Region IX), Nelson (Region I), Rose (Region IV), Shell (Region V), and Tellier (Region I) - are

or were GS-101-11, -12 or -13 Vocational Rehabilitation Program Specialists.

21. All of the Plaintiffs except Brian Miller were forty years of age or older during the events in question.

22. Richard Anderson (DOB 1951) is disabled on one side of his body due to a traumatic brain injury at nine months of age. This limits his ability to perform manual tasks.

23. Bryan Bashin (DOB 1955) is totally Blind.

24. Joe Cordova (DOB 1951) is totally Blind.

25. Loerance Deaver (DOB 1942) is African-American.

26. Michael Evans (DOB 1941) has a record of being legally Blind, and currently has impaired and monocular vision.

27. Joseph Farrell (DOB 1940) has Diabetes Mellitus with peripheral neuropathies and cardiac disabilities, which limit the manner in which he can eat and limit his ability to walk and perform physical tasks.

28. Marian Fuller (DOB 1949) has been living with systemic lupus erythmatosis, a potentially fatal auto-immune disorder, for more than twenty years.

29. Martha Garber (DOB 1949) has multiple physical and mental disabilities, including one which limits her ability to perform manual tasks.

30. Diana Koreski (DOB 1950) is fifty-six years old.

31. Seymour Levy (DOB 1944) is fifty-nine years old.

32. Charles Linster (DOB 1949) has quadriplegia resulting from an accident in 1965.

33. Brian Miller (DOB 1967) is totally Blind.

34. Jeffrey Mitchell (DOB 1939) is sixty-six years old.

35. John Nelson (DOB 1952) has quadriplegia resulting from an accident at age 14.

36. Kathleen Niemi (DOB 1956) is fifty-two years old.

37. Noel Nightingale (DOB 1964) is totally Blind.

38. Ralph Pacinelli (DOB 1934) is seventy-three years old

39. Bruce Rose (DOB 1952) has congenital Cerebral Palsy, which substantially limits his ability to speak and perform physical tasks.

40. Janette Shell (DOB 1951) has Type II diabetes and an anxiety disorder, which limits the major life activities of eating and digestion.

41. Jacquelyn Tellier (DOB 1955) has a disabling spinal condition (scoliosis with compensatory curvature) and occupational asthma, which limits the major life activities of breathing and the duration for and manner in which she can sit or stand.

42. Several of the Plaintiffs (e.g., Bashin, Evans, Linster, Miller, Nelson, Nightingale, and Shell) joined the federal service under Schedule A hiring authority, i.e, they were hired as excepted service appointees based on their targeted disabilities. Except for Miller and Bashin, each of the Schedule A appointees in the Plaintiff group attained career competitive status prior to the RIF by successfully completing two or more years in probationary status.[3] Mr. Miller became eligible to convert to competitive status on January 26, 2006. Mr. Bashin were hired in

---

[3] See 5 C.F.R. §3.1(b): "Upon recommendation by the employing agency, and subject to such requirements as the Office of Personnel Management may prescribe, the following classes of handicapped employees may acquire competitive status without competitive examination: (1) a severely physically handicapped employee who completes at least two years of satisfactory service in a position excepted from the competitive service . . (3) an employee with a psychiatric disability who completes at least 2 years of satisfactory service in a position excepted from the competitive service."

January 2004 and was terminated pursuant to the challenged RIF a few months before he would have been eligible to convert to competitive status on January 27, 2006.

43. Ms. Koreski, Mr. Linster, Mr. Mitchell, and Ms. Niemi took early retirement effective July 2, 2005, rather than be terminated and lose their health insurance. Each of these early-retiring Plaintiffs regards his or her retirement as involuntary and a constructive adverse action, and has filed a complaint with the Department's EEO Group.

44. The other twenty Plaintiffs either were ineligible for early retirement or a buyout, or refused them because the offered terms were economically disadvantageous. Each Plaintiff who did not retire early received a RIF notice on or after July 18, 2005.

45. At midnight on September 30, 2005, Plaintiffs Bashin, Cordova, Deaver, Garber, Nelson, Nightingale, Pacinelli, Rose and Tellier were separated from federal service pursuant to the noticed RIF.

46. In order to avoid being terminated, Plaintiffs Farrell and Fuller retired on September 30, 2005. Each regards his or her retirement as involuntary and a constructive adverse action, and timely filed a complaint with the Department's EEO Group.

47. After the agency refused to accommodate him, Plaintiff Evans retired in December 2005. Mr. Evans regards his retirement as involuntary and a constructive adverse action, and timely filed a complaint with the Department's EEO Group.

48. After the agency harassed, retaliated against and failed to accommodate her, Plaintiff Nightingale resigned in December 2005. Ms. Nightingale regards her resignation as involuntary and a constructive adverse action, and timely filed a complaint with the Department's EEO Group.

49. Defendant is Secretary of the Department of Education, which has authority, *inter alia*, over the hiring, firing, assignment, and terms and conditions of employment of persons employed by the Department, including but not limited to, persons working for the Rehabilitation Services Administration prior to and following October 1, 2005. Defendant is the named defendant, but is sued in her official capacity, as required by the Rehabilitation Act and ADEA. 29 U.S.C. §§ 791, 633a.

### IV. Statement of the Facts

50. The RSA Regional Offices employed a workforce of whom 43% were disabled within the meaning of the Rehabilitation Act and 92% were over 40 years of age. These characteristics made the RSA regional employees different from any other identifiable workforce within the Department.

51. Dr. Andrew Pepin, the Executive Administrator of OSERS, of which RSA is a component, has a record of open hostility towards disabled people, especially the Blind, and informed (Blind) members of the RSA leadership team more than once that RSA employs "too many Blind people."

52. The agency has also made illegal inquiries about the nature of its employees' disabilities where the employees in question have not requested accommodations.

53. The agency has resisted hiring qualified Blind job applicants, even cancelling one vacancy after inquiring and learning that the selectee was Blind. In another instance, a highly qualified Blind applicant did not make the Best Qualified list or receive an interview after an OSERS review of the merit selection certificate, though he has qualifications that are observably superior to those of the eventual (seeing) selectee.

54. The agency has repeatedly failed to provide adequate accommodations for Blind employees who need readers. For example, two of the Blind Plaintiffs, Bryan Bashin and Brian Miller, were required to share one reader as they went about their business during the work day. Because their duties required significant amounts of travel and the agency would not permit its staff readers to travel, the Blind Plaintiffs were required to go through a torturous process of hiring a contract reader every time they traveled on business. Id. The agency has never claimed, much less shown, that hiring assistive employees is an undue hardship; it simply refused to do so.

55. The RSA regional offices performed functions essential to fulfillment of RSA's statutory mandate: enforcement of the Rehabilitation Act's provisions governing the federal-State partnership to provide vocational rehabilitation services to severely disabled adults in 56 states and U.S. territories. Functions unique to the regional offices include (1) State Plan approval, (2) monitoring and (3) technical assistance. The regional offices also administered several hundred discretionary and formula grant programs that, prior to October 1, 2005, were competed but not administered by any agency staff stationed at headquarters.

56. In February 2005, the agency announced plans to close the RSA regional offices and "consolidate" the functions thereof in agency headquarters. The primary alleged reason for the closures was the need to reduce ED headcount by 66 people - the exact number of regional RSA employees. This agency action solely and disparately impacted the Plaintiffs and their disabled and older colleagues.

57. In February 2005, when the closures were announced, the Department's total number of Full-Time employees (FTEs) was below the ceiling in the FY2006 Budget which is the basis for the agency's claim that it is necessary to close the RSA regional offices and

terminate the regional staff as a whole.

58. Though the ED budget for FY2006 has not yet been signed into law, the Appropriations committees os both Houses of Congress have recommended funding for all of RSA's programs at levels at or exceeding the levels requested by the Department. OSERS will receive an additional $300 million to administer in FY2006.

59. The regional employees who did not accept a "voluntary early retirement" offer during a brief window in May and June 2005 received RIF notices in July 2005 stating that their employment and health insurance will be terminated effective September 30, 2005. Because the closures and RIF disproportionately impacted the RSA regional workforce, which contains high percentages of disabled and older workers, they violate the Rehabilitation Act and the ADEA.

60. Agency officials deny that a transfer of function has taken place and thus failed to offer transfers to any of the affected employees who currently perform these functions. Instead, the central office staff, which has significantly fewer disabled employees, assumed the regional office functions. The vacancies created at headquarters were announced competitively only after the window for accepting the early retirement/buy-out offer closed. Additional vacancies were announced only after the RIF was implemented, depriving those employees who were terminated or who retired because of the RIF of the priority reemployment rights they would have had under the agency's CTAP program before they were separated from federal employment.

61. The agency directed all disabled regional employees to apply for the new headquarters positions under Schedule A, thereby imposing discrete requirements on them and classifying or segregating them from their non-disabled colleagues.

62. The agency also announced a change to its policy that assistive employees hired as

accommodations for Blind or deaf employees will be counted: after September 30, 2005, such employees will be counted and paid by the individual program components that employ the disabled employees who need the accommodations. Currently, and for the last several years, the agency had paid such employees from a pool managed by the Office of Management in order to facilitate the hiring of qualified disabled persons notwithstanding program budget pressures. The new policy is a clear disincentive for programs to hire disabled applicants who may require the reasonable accommodation of a reader, an interpreter or the services of any other assistive employees.

**VI.     Statement of the Claims**

63.     **COUNT 1:** Based upon the facts set forth in ¶¶1- 62, Plaintiffs' positions were eliminated effective September 30, 2005 due to discrimination based on age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing Plaintiffs pecuniary and non-pecuniary harm.

64.     **COUNT 2:** Based upon the facts set forth in ¶¶1- 62, those Plaintiffs who are competitive status federal employees were denied the right, under 5 U.S.C. §3503, to transfer with their functions due to discrimination based on age and/or disability and/or in reprisal in violation of the Rehabilitation Act and the ADEA causing plaintiffs pecuniary and non-pecuniary harm.

65.     **COUNT 3:** Based upon the facts set forth in ¶¶1- 62, those Plaintiffs who applied under vacancy announcement OSERS-2005-18 were not selected because of their age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing Plaintiffs pecuniary and non-pecuniary harm.

66.     **COUNT 4:** Based upon the facts set forth in ¶¶1- 62, those Plaintiffs who applied under vacancy announcement OSERS-2005-19 and were not selected were subjected to discrimination based on age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing Plaintiffs pecuniary and non-pecuniary harm.

67.     **COUNT 5:** Based upon the facts set forth in ¶¶1- 62, those Plaintiffs who were selected for positions at headquarters were then denied standard relocation benefits were eliminated effective September 30, 2005 because of their age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing Plaintiffs pecuniary and non-pecuniary harm.

68.     **COUNT 6:** Based upon the facts set forth in ¶¶1- 62, those Plaintiffs who were selected for positions at headquarters and who were then denied reasonable accommodation, harassed or otherwise retaliated against were constructively discharged due to their age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing Plaintiffs pecuniary and non-pecuniary harm.

69.     **COUNT 7:** Based upon the facts set forth in ¶¶1- 62, those Plaintiffs who were applied for positions within the agency's rgeional OCR offices but were denied priority placement due to the agency's alteration of its CTAP policy, were subjected to discrimination based on their age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing Plaintiffs pecuniary and non-pecuniary harm.

70.     **COUNT 8:** Based upon the facts set forth in ¶¶1- 62, those Plaintiffs who were

deprived of CTAP priority for positions at headquarters due to the agency's failure to announce Vacancies No. OSERS-2005-46 or OSERS-2006-01 before the RIF took effect were subjected to discrimination due to their age and/or disability and/or in reprisal for their protected activity, in violation of the Rehabilitation Act and the ADEA, thereby causing Plaintiffs pecuniary and non-pecuniary harm.

## PRAYERS FOR RELIEF

Wherefore, plaintiffs request that the Court:

a. Declare that defendant has violated the Rehabilitation Act and the ADEA with respect to Plaintiffs;

b. Declare that Defendant has violated 5 U.S.C. §3503 with respect to the Plaintiffs who were competitive status federal employees prior to October 1, 2005;

c. Enjoin defendant from further discrimination against Plaintiffs;

d. Award each Plaintiff monetary damages to the maximum extent allowed by law;

e. Award Plaintiffs attorneys fees as part of their costs; and

f. Award Plaintiffs any other legal and equitable relief to which they are entitled by the evidence.

Respectfully submitted,

   /s/ George M. Chuzi
George M. Chuzi (D.C. Bar 336503)
Heather G. White (D.C. Bar 497159)
Kalijarvi, Chuzi & Newman, P.C.
1901 L Street, NW
Suite 610
Washington, D.C. 20036
Tel: (202) 331-9260

                                             Fax: (202) 331-9261
                                             Attorneys for Plaintiffs